CARTER *v.* MARBLE PRODUCTS INCORPORATED *et al.*

No. 9824.  JULY 11, 1934.

*Harold T. Patterson* and *Dorsey & Shelton,* for plaintiff.
*Hewlett & Dennis* and *Lindley W. Camp,* for defendants.

BELL, J.  Samuel M. Carter brought his petition against J. R. Goble, Marble Products Inc., and others, and alleged that in 1850 Farish Carter, who was the owner of three land lots in Gilmer County, Georgia, made to William Goble a warranty deed thereto, in which deed was the following reservation: "The said Farish Carter hereby expressly reserving and excepting to himself, his

heirs, executors, administrators, and assigns, all the marble and marble quarries on, in, or upon said lots of land, together with the water-power upon said lots for machinery of every character, together with the perpetual right of way, ingress and egress, to and from all the quarries of marble on said lots with all vehicles, and also the right to all necessary wood for fuel on said lots." Plaintiff alleged that he acquired the interest of Farish Carter in the marble, as reserved in the deed; that W. F. Goble and J. R. Goble acquired the interest of William Goble; that the marble interest owned by him included a mineral known as dolomite; that the defendants in error conspired to defraud him of his marble interest, and to that end defendants W. F. Goble and J. R. Goble executed and delivered to defendant Williams certain leases of the dolomite, which leases defendant Williams in turn transferred to defendant Marble Products Inc. Plaintiff claimed that the marble interest was of a certain value. He prayed for an injunction restraining defendants from removing the mineral termed "dolomite," and for cancellation of the leases as a cloud upon his title.

The defendants filed answers in which they denied the plaintiff's contentions, except that they admitted the execution of the deed by Farish Carter to William Goble, as alleged in the petition, and that the plaintiff is the present owner of whatever rights were reserved by the grantor therein; and further admitted that they claim their right and title under William Goble. They alleged that the leases in question merely conveyed the right to remove dolomite or dolomitic limestone, and that this is a mineral separate and distinct from marble as the term "marble" was used and understood in the deed made by Farish Carter to William Goble in 1850. They denied that they were removing any marble from the land in question, and disputed the plaintiff's right to any of the relief sought.

Upon a previous trial of the case the jury found a verdict in favor of the defendants, and a judgment refusing a new trial was reversed by this court because of errors in the admission of evidence and in the charge of the court. A more complete statement of the contentions of the parties as contained in the pleadings may be found in *Carter* v. *Marble Products Inc.*, 171 *Ga.* 49 (154 S. E. 891). Upon a subsequent trial the defendants again prevailed, and once more the plaintiff assigns error upon the refusal of a new trial.

■ In the first special ground of the motion for new trial, the movant complained of the admission of the following testimony of J. A. Williams, a witness for the defendants: "Commercially, my understanding of marble is, material that can be gotten out in blocks and used in a commercial way, in that way, and whitestone is material we get out and crush into chips." The evidence was objected to on the ground that it was "manifestly an opinion and conclusion of the witness, who was not an expert and who was not qualified to give an opinion of that kind;" and "that it was hearsay evidence." In special ground 2 error was assigned upon the admission of the testimony of the same witness as follows: "I have been in marble quarries and seen how that is gotten out, only in a general way. I have seen them get it out at other places. It is gotten out with channeling machines and derricks. I only know what the common acceptance of marble is in a commercial way. In my experience as a marble man I have never seen marble gotten out like this material is gotten out at Whitestone. I have never seen marble gotten out with a jack-hammer and dynamite and afterwards used in a commercial way, as marble is now used." The objections to this evidence were the same as those stated in ground 1 above. There is no merit in either of these grounds. The witness testified that he was engaged in the marble business in the vicinity of the land in question from 1916 to 1929, being manager of a mining plant operated under the name North Georgia Marble Products Company, and that he had been in marble quarries and had observed in a general way the manner in which such quarries are operated. He further testified that he knew what the common acceptance of marble is in a commercial way. Assuming that the testimony objected to could be considered as opinionative, we think it sufficiently appeared that the witness was an expert concerning the subject about which he testified, and that the court did not err in refusing to exclude the testimony. In *Macon Railway & Light Co.* v. *Mason,* 123 *Ga.* 773 (5) (51 S. E. 569), it was held that, generally, nothing more is required to entitle one to give testimony as an expert than that he has been educated in the particular trade or profession, and that special knowledge in regard to a particular subject may be derived from experience as well as study and direct mental application. Under this rule the witness was prima facie qualified. There is nothing to indicate that he was testifying from

hearsay. "Unless it affirmatively appears that evidence is hearsay, it is not to be excluded as such where it is of a nature which admits of its resting on the personal knowledge of the witness." *Atlanta Glass Co.* v. *Noizet,* 88 *Ga.* 43 (2) (13 S. E. 833). See also *Shaw* v. *Jones,* 133 *Ga.* 446 (3) (66 S. E. 240); *Jarriel* v. *Savannah Guano Co.,* 34 *Ga. App.* 72 (128 S. E. 237).

■ The plaintiff introduced in evidence statements of account issued by Marble Products Inc., in which it billed to a customer certain material as "marble chips;" also a letter from the same company, in which it solicited an order for such material. These documents were introduced as containing admissions by Marble Products Inc. that the material which it was removing from the land consisted of marble within the purview of the reservation relied on by the plaintiff. These documents were issued by an agent or representative of the company by the name of Hubbard, who did not testify as a witness and whose absence was apparently unaccounted for. R. T. Willingham, assistant office manager of the company, was permitted to testify as follows, in explanation of the documents just referred to: "On May 17th, 1926, I was assistant office manager of Marble Products Inc. This paper you hand me, purporting to be a bill of Marble Products Inc. to U. S. Mosaic Tile Company, I know why the material mentioned in that bill was billed out as marble chips. When they started using this whitestone for terraza, it took the place of marble chips which had been used up to that time, the marble chips imported from Italy, entirely. When we first began to receive orders our customers asked for marble chips. And if we had billed out that material as anything else, we would have raised a question in their minds as to its fitness for the purpose they had ordered it for marble chips. And, however they ordered it, that was the way we showed it on our invoices. As to this other paper you hand me, dated March 16th, 1926, on the billhead of Marble Products Inc. to U. S. Mosaic Tile Company, the same reason I have just given as to the other bill applies for that having been billed out that way. And I will say this, in the majority of these cases, this same material was not billed as white marble chips; these two bills are the exception. I would say that over the period of a year or two, 1926 and 1927, we had eight or ten orders from the Mosaic Tile Company, and these are the only two bills that they seem to have here. I don't know

what they have done with the others. I don't know how the others were billed, what they contained. It would depend entirely on how they ordered the material. As to the letter you exhibit to me, dated October 10th, 1927, from Marble Products Incorporated to U. S. Mosaic Tile Company, and the expression used therein, of 'Alabama and Georgia White Marble Chips,' we handled Alabama marble chips, and that was entirely different from this whitestone or mineral up at Whitestone, Georgia. Marble Products got that mineral or those chips from Gant's Quarry, Alabama. That was a marble quarry, and those marble chips were a by-product in the production of marble blocks. I have noted the letter dated September 23rd, 1926, to the Mosaic Tile Company. Mr. Mion had been a customer of ours. My brother Harold is dead, and I was assistant office manager of Marble Products Inc. during this time. This Mr. Mion is an Italian." The plaintiff objected to this testimony upon the ground that the witness Willingham could not testify as to why Hubbard "wrote that letter or why he used certain words in that letter," namely the words "white marble chips;" and the overruling of this objection is complained of in the third special ground.

The court did not err in admitting the evidence over the objection urged. The weight to be given to the admissions of a party depends largely upon the circumstances under which they are made; and where an admission is not made as a part of a contract between the parties, it may be disproved, rebutted, or explained by the party against whom it is introduced as evidence. *Luther* v. *Clay,* 100 *Ga.* 236 (3) (28 S. E. 46, 39 L. R. A. 95); *King* v. *Shepard,* 105 *Ga.* 473 (30 S. E. 634); *Phœnix Insurance Co.* v. *Gray,* 113 *Ga.* 424 (2) (38 S. E. 992); *Hill* v. *Armour Fertilizer Works,* 21 *Ga. App.* 45 (5) (93 S. E. 511); *William Hester Marble Co.* v. *Walton,* 22 *Ga. App.* 433 (4) (96 S. E. 269). The admissions were to be considered in the light of all the attendant facts and circumstances, proof of which could be made by any person acquainted therewith. The corporation was not limited in such proof to the agent who is claimed to have made the admissions, but could explain them by any other witness having knowledge of the conditions and circumstances under which the alleged admissions were made. Cf. *Louisville & Nashville Railroad Co.* v. *Bradford,* 135 *Ga.* 522 (5) (69 S. E. 870). The witness did not purport to

say what was in the mind of Hubbard at the time he used the phrase "marble chips," but merely testified to facts from which the jury could draw their own inferences as to the meaning of this language and the force to be given to it as an admission by the corporation. Regardless of other portions of the testimony, it was undoubtedly permissible for the corporation to show that it was handling marble chips from Alabama; and since the testimony was objected to in mass, and at least a part of it was competent, the objection to the whole was properly overruled. *Knight* v. *State,* 143 *Ga.* 678 (6) (85 S. E. 915); *Dixie Mfg. Co.* v. *Ricks,* 153 *Ga.* 364, 370 (112 S. E. 370).

■ The plaintiff objected to the admission of the following testimony as delivered by R. J. Goble, a witness for the defendant: "I hold the position of ordinary of this county now. I am not keeper of the tax returns of this county now, but I have got some of the old tax records in my office. I have heretofore made a search of the old tax records, around 1868, 1870, and 1872, in these years, for the returns of Farish Carter or any other Carter. I fail to find any tax return, prior to 1902, upon any mineral, by any Carter, to Gilmer County on lot 142 or 111, or any other lot in this county, where they returned it. I have got the 1902 record here. I have got the old tax digest of 1865 here in my possession. I didn't find in it any return by Farish Carter of any mineral or land, or otherwise. This 1865 here is the furtherest back that I could find when you asked me to look for them on yesterday." The objections to this evidence were as follows: "(1) That it was immaterial and irrelevant. (2) Because there was no law in Georgia before about 1890 which required tax returns to be made on any sort of mineral or marble interests, and of course the witness could not find any returns made on such an interest in any office in Georgia. (3) That the fact of a return of this property or failure to return property of this sort before it was actually required under the law could not illustrate any issue in this case." Evidence which tends to establish the issue in controversy is admissible, even if it is not of itself sufficient for that purpose. *Nugent* v. *Watkins,* 129 *Ga.* 382 (2) (58 S. E. 888); *Tifton &c. Railway Co.* v. *Butler,* 4 *Ga. App.* 191 (4) (50 S. E. 1087); Civil Code (1910), § 5744. Evidence is presumed to be admissible unless some objection is made which shows the contrary; and where the admissibility of evidence is

doubtful, the rule in this State is to admit it for the consideration of the jury under proper instructions from the court. *Jasper County* v. *Butts County,* 147 *Ga.* 672 (95 S. E. 254). Where evidence is objected to, the burden is upon the objecting party to show wherein the evidence is inadmissible. *Murphey* v. *Bush,* 122 *Ga.* 715, 719 (50 S. E. 1004).

The record fails to show the date when Farish Carter died, and so far as appears he could have been living as late as 1902. We can not consider the statement in the brief of counsel for the plaintiff as to the time when Farish Carter died, the record being wholly silent upon that question. Nor is there anything to indicate that whatever rights he may have had or claimed under the reservation in his deed to William Goble were conveyed or in any manner transmitted to any other person prior to the year 1902. In fact the record shows only that he made the reservation in 1850, and that Samuel M. Carter, the plaintiff, "acquired and owns the rights and interest which said Farish Carter reserved in said deed." Whether or not an owner of a mineral interest in land was required to return the same for taxation before the passage of the act of November 12, 1889, it was the duty of all persons after the passage of that act to return for taxation any mineral interests owned by them. Civil Code (1910), § 1008. The evidence objected to showed that no person returned any mineral interest in the lands in question prior to the year 1902. If Farish Carter was still living and had not in the meantime disposed of the supposed rights which he had reserved in the deed to William Goble, there was a period of twelve years, that is, 1890 to 1901, inclusive, during which he should have returned for taxation the marble and marble quarries, if any, on the lands to which the reservation applied; and his failure to return the same was a circumstance, though perhaps of only slight probative value, tending to show that no marble or marble quarries were in fact appurtenant to these lands. In the course of time he could have reached the conclusion that there was no marble in or upon the property within the meaning of the contract between him and Goble. Where a party fails to return property for taxation, evidence of this fact is admissible as a circumstance to show that he did not own the property. *Jones* v. *Grantham,* 80 *Ga.* 472 (3) (5 S. E. 764); *Norton* v. *Aiken,* 134 *Ga.* 21 (5) (67 S. E. 425); *Anderson* v. *Brown,* 72 *Ga.* 713 (4); *McLendon* v. *Dunlap Hard-*

*ware Co.,* 3 *Ga. App.* 206 (59 S. E. 718) ; *Blount* v. *Dunlap,* 34 *Ga. App.* 666 (2) (130 S. E. 693). "Admissions do not come in on the ground that the party making them is speaking from his personal knowledge, but upon the ground that a party will not make admissions against himself unless they are true. The fact that he makes them against his interest can be reasonably explained only on the supposition that he is constrained to do so by the force of the evidence. The source from which a knowledge of the facts is derived is a circumstance for the jury to consider, in estimating the value of the evidence; but that is all." *Kitchen* v. *Robbins,* 29 *Ga.* 713. See also *Chero-Cola Bottling Co.* v. *Southern Express Co.,* 29 *Ga. App.* 656 (2) (116 S. E. 325) ; *Buckeye Cotton-Oil Co.* v. *Malone,* 33 *Ga. App.* 519 (6) (126 S. E. 913).

So far as appears from the record, the evidence as to the nonexistence of tax returns for the years 1890 to 1901, inclusive, could have related to the conduct of Farish Carter during a period when he and no other person had any claim in the marble interest purporting to have been reserved in the deed to William Goble, and the evidence was apparently admissible for the purpose of showing that he had concluded by some means that he had retained nothing of value by the reservation, in that there was no mineral in or upon the land which could be classed as marble within the purview of the contract. If this assumption is based upon a mere fiction, it is nevertheless an assumption which legally arises from the record; and if the facts were different, the burden was upon the plaintiff to show the truth in order to illustrate the inadmissibility of the evidence. In *Stubbs* v. *Central Bank,* 7 *Ga.* 258 (4), decided more than eighty years ago, it was said by this court that "prima facie the judgment of the court below is right," and that "the party who challenges the legality of the proceedings of inferior tribunals must prove the error by the record." In *Wikle* v. *Woolley,* 81 *Ga.* 106 (4) (7 S. E. 210), the court made the following statement: "There is a presumption in favor of adjudications when under review that they are correct; and the burden of showing error is upon the plaintiff in error, the party who asserts it. In this case the error, if any, is not within the field of observation, and it is more on that account than from any distinct discernment that the judgment was in itself faultless, that we affirm it." In *McConnell* v. *Slappey,* 134 *Ga.* 95 (67 S. E. 440), it was said: "The judg-

ment refusing a new trial should not be disturbed unless the complaining party makes error affirmatively appear, the error being of such character as to require the grant of a new trial. The presumption in favor of the judgment overruling the motion for new trial will not be overcome so long as the facts disclosed by the record before this court are consistent with any theory upon which the correctness of the judgment could rest."

Farish Carter was the predecessor in title of the plaintiff, Samuel M. Carter. His failure to return his claim for taxation was in the nature of an admission against him. Admissions by a person, adverse to his interest when made, are evidence against him, and against all persons claiming under him by a right arising subsequently thereto. *Howard* v. *Snelling,* 32 *Ga.* 195 (2), 203; *Terry* v. *Rodahan,* 79 *Ga.* 278 (4) (5 S. E. 38, 11 Am. St. R. 420); *Wright* v. *Zeigler,* 70 *Ga.* 501 (3); *Continental Fertilizer Co.* v. *Madden,* 140 *Ga.* 39 (2) (78 S. E. 460); Civil Code (1910), § 5780. It follows that the evidence was admissible against the plaintiff, so far as it may have related to the conduct of Farish Carter, his predecessor in title. It is contended by counsel for the plaintiff that the failure of the plaintiff himself or of others than Farish Carter to return the alleged mineral interests for taxation could not possibly throw any light upon the issue as to the meaning of the term "marble" as contained in the deed of 1850, and that the admission of the evidence was contrary to the ruling of this court as announced in the fourth headnote and the fourth division of the former decision in this case. From what has been said, the former decision, although the law of the case, is not applicable to *all* of the evidence to which objection was made. Whether or not it might have been applicable to some of the evidence, we need not decide. At least a part of the evidence was apparently admissible; and the rule is again applicable, that where evidence is objected to en bloc, and a part of it is admissible and competent, the objection fails. We conclude that the fourth special ground of the motion for new trial does not show any cause for setting aside the verdict.

In ground 5 the movant assigned error upon the following charge of the court: "I also charge you gentlemen, that if there has been any bills, invoices, or letters from Marble Products Company to Charles Mion or the Mosaic Tile Company, Atlanta, Geor-

gia, introduced in evidence before you, I charge you that they were admitted in evidence to go to the jury upon the question as to whether or not they were admissions on the part of the defendants, J. A. Williams and Marble Products Inc., and I charge you that they are to be in no wise considered by you as admissions upon the part of the defendants Goble unless they knew about them and acquiesced in them. The defendants Goble would not be bound by any admissions made by the defendants Marble Products Inc. and J. A. Williams, unless they knew about them and acquiesced in them, or in some way ratified them, and the same could not be considered as being in any sense binding upon the defendants Goble." It is contended that this charge was erroneous in that the admissions made by the other defendants should also have been considered as evidence against the defendants Goble, and that it was error to instruct the jury that such admissions could not be considered as being in any sense binding upon the last named defendants unless they acquiesced in or ratified such admissions. Even if the charge of the court is subject to the criticism lodged against it, it is apparent from the record that the error was harmless, and thus would constitute no sufficient cause for the grant of a new trial. Notwithstanding the jury were allowed to consider the admissions against Marble Products Inc. and J. A. Williams, the verdict was in favor of these defendants and *all* defendants. Accordingly, it is clear that the alleged admissions of the company and of J. A. Williams were explained to the satisfaction of the jury and became of no value to the plaintiff, even against the parties alleged to have made such admissions. The necessary conclusion is that the verdict would have been the same as to all defendants if the judge had not limited the effect of the admissions as he did in his charge. *McBride* v. *Georgia Railway & Electric Co.,* 125 *Ga.* 515 (54 S. E. 674). On the question whether the charge was correct, see *Ingram* v. *Little,* 14 *Ga.* 173 (58 Am. D. 549) ; *Boswell* v. *Blackman,* 12 *Ga.* 591; *Southern Life Insurance Co.* v. *Wilkinson,* 53 *Ga.* 535; *Manning* v. *Manning,* 135 *Ga.* 597 (4) (69 S. E. 1126) ; *Arnold* v. *Johnson,* 150 *Ga.* 604 (2) (104 S. E. 499).

■ The evidence authorized the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, J., disqualified.*